IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                    No. 2:25-mj-0330 DLM

CRISTHIAN ADRIAN ORTEGA-LOPEZ,

        Defendant.

## ORDER GRANTING MOTION TO RECONSIDER PRETRIAL RELEASE ORDER

**THIS MATTER** is before the Court on the United States' Motion to Reconsider Pretrial Release Order, filed on April 8, 2025. (Doc. 32.) For the reasons explained in this Order, the Court **GRANTS** the motion and **FINDS** the United States has sustained its burden to show by a preponderance of the evidence that Ortega-Lopez is a flight risk and to show by clear and convincing evidence that he is a danger to the community. Accordingly, the Court **CONCLUDES** that Ortega-Lopez must be detained on the basis that no condition or combination of conditions will reasonably assure his appearance or the safety of any other person and the community.

I.     Background

Defendant Ortega-Lopez illegally entered the United States in Eagle Pass, Texas on or about December 15, 2023. (Doc. 32-1.) He was detained by United States Department of Homeland Security personnel who, on December 18, 2023, released him on an Order of Release on Recognizance (Doc. 32-3) and provided him a Notice to Appear for a removal proceeding on July 29, 2025, in Denver Colorado (Doc. 32-2). Ortega-Lopez was then placed on a bus to Denver, where he stayed for three months prior to returning to El Paso, where he lived with another individual. (*See* Doc. 20 at 16:15–22.)

Ortega-Lopez met Nancy Cano while installing windows at her home in Las Cruces, New

Mexico. (*See id.* at 17:1–8.) Ms. Cano hired him for multiple jobs, and the two built a relationship. (*Id.* at 17:9–13.) When Ortega-Lopez faced eviction from his El Paso home, Ms. Cano allowed him and two of his roommates to stay at the guest house she owns with her husband, Jose L. Cano. (*Id.* at 17:1–25.) In early 2024, Ortega-Lopez moved into the Canos' property, moved to change the venue of his immigration hearing, filed a change of address, and filed an application for asylum. (*See id.* at 19:9–18; *see also* Doc. 11-1 at 26–43.)

In January 2025, Homeland Security Investigations Las Cruces received an anonymous tip that Ortega-Lopez "was residing with other illegal aliens" in Las Cruces "and was in possession of firearms." (*See* Doc. 1 at 2.) Through the subsequent investigation, agents retrieved photos and videos from Ortega-Lopez's social media accounts showing him in possession of firearms and ammunition. (*See id.* at 2–3.) Four of these photos are attached to the Criminal Complaint.[1] (*See id.* at 6–9.) On February 28, 2025, Ortega-Lopez was arrested, and on March 2, 2025, the undersigned signed a criminal complaint charging him with violating 18 U.S.C. § 922(g)(5) for unlawful possession of a firearm and/or ammunition by an illegal alien. (Doc. 1.) Ortega-Lopez told agents during a post-*Miranda* interview that the firearms belonged to an acquaintance. (*See id.* at 4.)

At his Initial Presentment hearing on March 3, 2025, the United States requested a three-day continuance of the Preliminary/Detention hearing. (*See* Doc. 3.) The Court set the hearing for March 6, 2025, but reset it to March 14, 2025, at Ortega-Lopez's request. (*See* Docs. 8; 14.) On March 14, 2025, Ortega-Lopez, through counsel Chaz Rotenberg, waived his preliminary hearing,

---

[1] The photos appear to be screen captures from Ortega-Lopez's social media account. The first photo depicts Ortega-Lopez holding a semi-automatic rifle and a handgun, with a shooting target in the background. (Doc. 1 at 6.) The second photo is of an unidentified individual's hand holding four bullets in various calibers. (*Id.* at 7.) The third photo shows two unidentified individuals' hands holding semi-automatic pistols. (*Id.* at 8.) The fourth photo depicts an unidentified individual (seen from behind) firing a semi-automatic rifle at a target at the gun range. (*Id.* at 9.)

and the Court conducted a detention hearing. (Docs. 14–15.) Ortega-Lopez has been in continuous custody since his February 28, 2025 arrest. (*See* Doc. 32 at 3.) The day before the hearing, Rotenberg filed 43 pages of exhibits, including 13 letters from individuals who knew and employed Ortega-Lopez to perform odd jobs[2] and who vouched for his character. (*See* Doc. 11-1 at 2–15.) The exhibits also included photos of Ortega-Lopez interacting with the Canos and paperwork related to his attempt to seek asylum. (*See id.* at 16–43.)

At the hearing, Rotenberg discussed the weapons shown in the photos attached to the Criminal Complaint. (*See* Doc. 20 at 20:24–22:15.) He explained that the Canos' daughter, who "is a social media influencer" and "sort of a brand ambassador for gun companies[,]" takes and posts these types of photos for "branding" purposes. (*See id.* at 20:25–21:9.) Thus, he argued, the Government had "explicitly stated" that the weapons Ortega-Lopez is holding in the photos belong to the Canos' daughter. (*See id.* at 20–23.) Agents seized the weapons not from the property where Ortega-Lopez lived, but from the daughter's house next door. (*See id.* at 21:23–22:4.) Counsel stated that on the day the photos were taken, Ortega-Lopez had accompanied the Canos and their daughter to the shooting range. (*See id.* at 21:11–19.)

Rotenberg argued that Ortega-Lopez's immigration status did not make him a flight risk, he wasn't a danger, and the Court could craft conditions that would allow for his release. (*See id.* at 38:1–39:22.) The Court questioned Maria Armijo, counsel for the United States, concerning Ortega-Lopez's ties to "Tren de Aragua (TdA)," described as "a transnational criminal organization and U.S. designated Foreign Terrorist Organization from Venezuela." (*See* Doc. 1 at 4; *see also* Doc. 20 at 41:9–23.) Armijo stated that Ortega-Lopez has an AK-47 tattooed on his ribs, and that

---

[2] These jobs included, for example, tending to yards, caring for pets while the owners were away, and assisting with a car rental business. (*See* Doc. 11-1 at 2–15.) The authors describe Ortega-Lopez as "hardworking, trustworthy, and honest[,]" and "the kind of person this country needs more of." (*See id.* at 7–8.)

3

other individuals who lived with him have TdA tattoos (i.e., the number 23 and another tattoo on his neck). (*See* Doc. 20 at 41:15–42:7.) Armijo stated that the other individual (not Ortega-Lopez) is photographed "wearing a hat with a crown, which is . . . another [TdA] sign." (*See id.* at 42:7–10.) As to Ortega-Lopez's danger to the community, counsel for the United States argued "[t]he danger that we have is strictly related to the firearms, the fact that he had the firearms and of the gang association. That's what we have is the danger." (*See id.* at 56:10–17.) When questioned on whether the United States had any evidence that the firearms depicted in the photos attached to the criminal complaint were illegal, counsel stated that one firearm had been sent to ATF to determine if it had been modified, and the recovered suppressor was registered to the Canos' daughter. (*See id.* at 55:25–56:9.) When the Court asked if the United States "[had] anything else to present, any audio, any visual, anything?" (*see id.* at 57:23–24), counsel pivoted to discussing Ortega-Lopez's failure to comply with immigration requirements, such as his failure to apply for work authorization (*see id.* at 57:25–59:9). When the Court asked to see a photograph of Ortega-Lopez's AK-47 tattoo, Armijo showed the Court a photo on the case agent's phone. (*See id.* at 62:2–24.)

On balance, counsel for the United States provided precious little evidence, consisting of photos depicting Ortega-Lopez at a firing range with the Canos shooting their daughter's guns, a tattoo of an AK-47, tattoos on other individuals, and apparel worn by other individuals, to meet its burden to show clear and convincing evidence that Ortega-Lopez was a danger. (*See id.* at 64:16–22.) Indeed, based on the information presented to the Court, including substantial community support for Ortega-Lopez and his proactive conduct in updating his address and moving to change his immigration hearing venue with the Immigration Court, the Court was not convinced that the United States met its burden to establish by a preponderance of the evidence that he was a flight risk. (*See id.* at 63:25–64:0.) Accordingly, the Court entered an Order Setting Conditions of

4

Release. (*See* Doc. 18.) The Court *did not*, however, release Ortega-Lopez from custody in order to allow the United States an opportunity to appeal the order and to give Pretrial Services time to re-interview Nancy Cano to assess her suitability to serve as a third-party custodian.[3] (*See* Doc. 20 at 64:23–65:11.)

On March 28, 2025, the United States filed its Brief in Support of Appeal of Detention Order. (Doc. 29.) The motion contained 12 exhibits, including 28 photos, only *one* of which the United States presented to the Court—via the case agent's phone—at the March 14, 2025 detention hearing.[4] (*See* Docs. 29-5–9, 29-11–12.) On April 1, 2025, United States District Judge Margaret I. Strickland remanded the Order Setting Conditions of Release, because the United States' appeal consisted of new "facts and evidence that were not presented to" the undersigned at the March 14, 2025 detention hearing. (Doc. 30 (citing Docs. 13; 18).) Judge Strickland stated that "the magistrate judge should have an opportunity to determine whether the Government's new facts and evidence support an order of detention" and gave the United States seven days to file a motion for reconsideration. (*Id.*)

On April 8, 2025, the United States filed its Motion to Reconsider Pretrial Release Order pursuant to 18 U.S.C. § 3142(f). (Doc. 32.) The Government argues that Ortega-Lopez is a flight risk and a danger to the community, and that no condition or combination of conditions would adequately ensure his presence or the safety of the community. (*Id.* at 6.) Also attached to the motion are the same exhibits the Government attached to its Appeal of Detention Order. (*Compare*

---

[3] On April 24, 2025, following the detention hearing, the Canos were arrested on separate charges of violating 18 U.S.C. § 1512(c)(1) for tampering with evidence and 18 U.S.C. § 1512(k) for conspiracy to tamper with evidence. *See* 2:25-mj-0867, Doc. 2; 2:25-mj-0868, Doc. 2. On April 29, 2025, both were released by another United States Magistrate Judge with conditions imposed, including a prohibition of contacting or communicating with Ortega Lopez, pending the resolution of their cases. *See, e.g.*, 2:25-mj-0867, Doc. 6.

[4] One of the 28 photos had also been attached to the Criminal Complaint. (*See* Docs. 1 at 6; 29-8 at 2.) The exhibits also included copies of Ortega-Lopez's immigration papers and screenshots of text messages. (*See* Docs. 29-1–4, 29-10.)

Docs. 32-1–12, *with* Docs. 29-1–12.) As noted above, the United States failed to present the vast majority of these exhibits to the undersigned at the detention hearing. The exhibits include, in relevant part, text messages indicating Ortega-Lopez's affiliation with TdA, a desire to obtain a grenade and other firearms, photos of Ortega-Lopez with tattoos, clothing, jewelry, and making hand signs consistent with TdA gang membership, and three photos of bodies that are decapitated and mutilated. (*See* Docs. 32-5–12.)

On April 17, 2025, Ortega-Lopez filed an Opposed Motion to Deny Government's Motion to Reconsider and Vacate Detention Hearing. (Doc. 34.) On April 28, 2025, he filed a notice withdrawing his motion and notified the Court that he does not oppose the United States' Motion to Reconsider the Pretrial Release Order. (Doc. 38.) The Court held a Hearing on the Motion for Reconsideration on April 30, 2025. (*See* Doc. 39.)

## II.    Legal Standard

Normally, individuals criminally charged are not subjected to pretrial detention. *See* 18 U.S.C. § 3142(b); *see also United States v. Salerno*, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."). Nevertheless, the Bail Reform Act provides that "a defendant may be detained pending trial only if a judicial officer finds 'that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community.'" *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003) (quoting 18 U.S.C. § 3142 (e)) (citing 18 U.S.C. § 3142(b), (c)). "A judicial officer may make such a finding only after holding a hearing according to the procedures specified in § 3142(f), and the government bears the burden of proof at that hearing." *See id.* "The government must prove risk of flight by a preponderance of the evidence . . . ." *Id.* (citations omitted). "[I]t must prove dangerousness to any other person or to the

6

community by clear and convincing evidence." *Id.* (citing 18 U.S.C. § 3142(f)).

Section 3142(g) requires the judicial officer consider four enumerated factors "in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community . . . ." 18 U.S.C. § 3142(g). These factors include:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person including–
>  (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history related to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>  (B) whether at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> (4) the nature and the seriousness of the danger to any person or the community that would be posed by the person's release. . . .

*Id.* The Bail Reform Act allows the judicial officer to reopen the detention hearing "at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing . . . ." *See* 18 U.S.C. § 3142(f)(2). The new information must have a "material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." *Id.*

### III.    Analysis

As described in the Background section above, the United States—for reasons that are not clear to the Court—failed to present evidence beyond the photos attached to the Criminal

7

Complaint, a photo displayed on a case agent's phone, and information on another individual's hat and tattoos. As a direct result of this lack of evidence, and because Ortega-Lopez produced evidence of his good character and ties to the community, the Court found the United States failed to meet its burden to show that Ortega-Lopez was a flight risk or a danger.

In its post-hearing appeal brief (Doc. 29) and Motion for Reconsideration (Doc. 32), the United States offers evidence for the first time that has a material bearing on the the Court's consideration of the § 3142(g) factors. The "new" evidence was apparently obtained when three cellphones linked to Ortega-Lopez were seized on February 28, 2025, and subsequently extracted prior to the March 14, 2025 detention hearing. (*See* Docs. 29 at 13; 32 at 13; 37-1 at 2.) Having the benefit of the newly revealed exhibits, the Court may now re-examine the § 3142(g) factors.

With respect to the first factor, the Court notes that Ortega-Lopez was in possession of firearms at a shooting range with the Canos. As to the second factor, the weight of the evidence in support of the charge is significant. Regarding the third factor, although Ortega-Lopez presented considerable evidence regarding his good character and ties to the community he was adopted into when he befriended the Canos, the Government now offers significant new evidence to show that he also has ties to TdA and a demonstrated interest in violent crime. (*See, e.g.*, Doc. 32 at 13 (discussing Docs. 32-5–8, 32-10–12).) This evidence consists of photographs from Ortega-Lopez's phone and social media accounts documenting his apparent personal association with TdA including tattoos, gang signs, clothing, jewelry, and emojis; text messages found on his phone with explicit references to TdA and "a request to get a grenade or two 38s"; and gruesome photos found on his phone showing two decapitated and mutilated bodies. (*See* Docs. 32-5–12.) Finally, with respect to the fourth factor, the United States now presents evidence sufficient to show Ortega-Lopez's personal ties to and involvement with a criminal organization.

The Court emphasizes that, had the Government presented these photographs and text messages at the initial detention hearing, together with their now satisfactory explanation of how the evidence ties Ortega-Lopez *personally* to TdA, this evidence would have materially affected the Court's decision. Counsel for the United States did not adequately explain at the reconsideration hearing why this evidence was not presented at the initial detention hearing, given that Ortega-Lopez's cell phones and social media had presumably been examined pursuant to two search warrants unsealed on March 5, 2025, eight days before the hearing. *See* 2:25-mr-0347 GBW; 2:25-mr-0348 GBW. Indeed, Rotenberg noted in a reply brief that "[t]he extraction reports from [Ortega-Lopez's] cell phone reveal that extraction began and ended on **March 12, 2025**[,]" two days before the initial detention hearing. (*See* Doc. 37 at 1 (citing Doc. 37-1 at 2).)

This evidence is material and critical to the Court's analysis of whether detention is warranted. If the Government had presented these photographs and text messages on March 14, 2025,[5] the Court would not have hesitated to detain Ortega-Lopez. As it happened, however, the United States failed to meet its burden under the Bail Reform Act.

Considering the newly presented evidence on reconsideration, the Court now finds that the United States more than meets its burden to show that Ortega-Lopez is a flight risk and poses a threat to the community if released. The Court finds no condition or combination of conditions would reasonably assure his appearance or the safety of the community and will, therefore, detain him pending resolution of this case.

As the Court noted at the April 30, 2025 reconsideration hearing, taking an individual's

---

[5] The Government's position would doubtless have been stronger had it originally offered testimony or evidence included in the applications for search warrants. *See, e.g.*, 2:25-mr-0347, Doc. 1 ¶ 17 (noting that Ortega-Lopez's social media post "said he received a firearm for Christmas from the Cano Family" (citing Doc. 1-3)), ¶¶ 25–26 (noting that Ortega-Lopez was seen in social media videos with tattoos, clothing, and other items that "featur[e] symbols linked to TdA").

9

liberty is a decision the Court does not take lightly. The Government would be wise to take its burden of proof at detention hearings just as seriously as the Court does.

**IT IS THEREFORE ORDERED** that the Motion for Reconsideration (Doc. 32) is **GRANTED**. The Court **FINDS** that Ortega-Lopez poses a flight risk and a danger to the community, and no conditions can reasonably assure his future appearance in Court or the safety of the community. The Court will, therefore, **DETAIN** Ortega-Lopez pending resolution of this case.

_____
DAMIAN L. MARTINEZ
UNITED STATES MAGISTRATE JUDGE